(80 South. 240)

No. 21543.

DEMARETS v. DEMARETS.

(Dec. 2, 1918.)·

*(Syllabus by Editorial Staff.)*

1. HUSBAND AND WIFE ☞267(1)—COMMUNITY PROPERTY—SALE BY HUSBAND.

A married man being the head and master of the marital community, may sell the community property without consulting his wife.

2. ACKNOWLEDGMENT ☞54—DEED AS EVIDENCE.

A duly acknowledged deed is authentic proof of all the recitals contained in it.

3. FRAUDULENT CONVEYANCES ☞295(1) — SHAM OR SIMULATED SALE—EVIDENCE.

In a widow's suit for a half interest in a tract sold by her husband to defendant, evidence *held* not to sustain her claim that the sale complained of was a sham or simulation.

4. EVIDENCE ☞317(18) — DECLARATIONS OF DECEDENT.

Testimonial proof of a declaration made by a person not under oath is not admissible in evidence after his death over the objection that it is hearsay, if it would be inadmissible were he alive as being hearsay.

Appeal from Fifteenth Judicial District Court, Parish of Jefferson Davis; Alfred M. Barbe, Judge.

Suit by Mrs. Emma Broussard Demarets against Dorsin Demarets. Judgment for defendant, and plaintiff appeals. Affirmed. ·

John J. Robira, of Jennings, for appellant.

Modisette & Adams, of Jennings, for appellee.

O'NIELL, J. This suit was brought by a widow to recover a half interest in a tract of land that was sold by her husband to the defendant.

The plaintiff alleged that the property had belonged to the marital community that was dissolved by the death of her husband, Elie T. Demarets, and that he had given a false and simulated deed of sale to the defendant, his brother, for the pretended price of $2,000, but without any real price or consideration whatever, and for the fraudulent purpose of depriving her of her half interest in the property, at a time when he and she had quarreled and separated.

The defendant, in answer to the suit, denied that the property had ever belonged to the marital community. He averred that it had belonged solely to Elie T. Demarets, but that whether the title was vested in the marital community or in Elie T. Demarets separately was a matter of no importance, because, as defendant alleged, he had bought the land, together with other lands of Elie T. Demarets, in good faith, for the price stated in the deed, $2,000, which he had paid in cash.

Judgment was rendered in favor of the defendant, and the plaintiff appeals.

[1, 2] A married man, being the head and master of the marital community, may sell community property without consulting his wife. Pretermitting the question whether the property belonged to Elie T. Demarets solely or to the marital community between him and the plaintiff, our conclusion from the evidence is that the plaintiff has failed to prove her allegation that the sale complained of was a sham or simulation. The deed was acknowledged by Elie T. Demarets before a notary public and two witnesses, and is therefore authentic proof of all of the recitals contained in it. It contains the acknowledgment of the vendor that he received ·in cash the price stated, $2,000, for the land in contest and other lands described and conveyed in the same deed. It appears, too, that the property was delivered over to the purchaser at the time of the sale, and that he had remained in possession of it continuously (excepting two pieces that he had voluntarily disposed of) when this suit was tried. The plaintiff's husband died a few weeks, or possibly a few months, after he

made the sale, more than 21 years before this suit was filed.

[3] The only direct evidence that was introduced to contradict the written deed was, in our opinion, not merely of a very weak character, but utterly inadmissible. We refer to the testimony of a witness named Fontenot, who related what he said Elie T. Demarets told him 10 or 15 days before Demarets died. The substance of the statement of the witness was that Elie T. Demarets said he owed his brother, Dorsin Demarets, $200, and gave him in payment a house which he believed was worth $200, and that Elie T. Demarets then said, to his sister's husband, E. T. Louvier:

"If he [Dorsin Demarets] doesn't part [divide] the property even [equally] with you and my niece, Henrietta, I am going to bother [haunt] him all his life."

It appears that Louvier's wife and the niece, Henrietta, and the defendant, Dorsin Demarets, were the three nearest relations and heirs at law of Elie T. Demarets; and the idea which the witness intended to convey was that Elie T. Demarets, in his last illness, thought that the property he had transferred to his brother, Dorsin, belonged yet to him (Elie T. Demarets), and should be divided equally among his three heirs at law. The witness declared that he had not spoken to any one of the statement that he related on the witness stand, during a period of more than 20 years. He said that E. T. Louvier and a man named B. Demarets were also present when the statement was made by Elie T. Demarets. Louvier, as a witness for the plaintiff, denied that any such statement was made by Elie T. Demarets. B. Demarets was not called as a witness, nor was his absence accounted for. To corroborate the testimony of the witness Fontenot, the plaintiff proved that, after the death of her husband, the defendant gave 60 acres of land to his sister, Mrs. Louvier, and 40 acres to his niece, Henrietta. Those circumstances amount to nothing without the testimony of the witness, Fontenot, which was not admissible. One of the subscribing witnesses to the deed testified that he had not seen any money paid at the time of signing the instrument; but he admitted that the deed had been prepared before he was called in to sign it as a witness, and that he paid very little attention to the transaction.

The defendant, being called as a witness for cross-examination by the plaintiff's attorney, swore that he had paid in cash the price stated in the deed, that $1,800 had been paid in various sums before the sale, and that the remaining $200 was paid on the day of the sale.

[4] The objection urged by the defendant's counsel to the testimony of the witness Fontenot that it was hearsay evidence—evidence of a self-serving declaration made by Elie T. Demarets that would not be admissible to contradict his written deed if he were alive—should have been sustained. Testimonial proof of a declaration made by a person not under oath is not admissible in evidence after his death, if it would be inadmissible were he alive. The cases in which the objection to such evidence has been held to refer to its effect rather than to its admissibility were cases in which proof of the declaration made by the deceased person would have been admissible in evidence against him if he had lived. Our careful research of the jurisprudence on the subject has not revealed an instance where testimony that would have been inadmissible as hearsay evidence was held to have become admissible by the death of the person quoted. In all except one of the decisions to which we have referred proof of the declaration made by the person who died was held to be admissible because the declaration was an admission against the interest of the person making it—an acknowledgment of a debt or other obligation. That was the reason for the ruling in each of the following cases

that such testimony, though of the weakest character of evidence, was admissible, viz.: Pargoud v. Amberson's Adm'r, 10 La. 355; Succession of Fox, 2 Rob. 299; Succession of Segond, 7 Rob. 112; Moran v. Le Blanc, 6 La. Ann. 113; Dupre v. McCright, 6 La. Ann. 146; Stancill v. Gilmore, 6 La. Ann. 763; Wilder v. Franklin's Ex'r, 10 La. Ann. 279; Bringier v. Gordon, 14 La. Ann. 274; Bland v. Lloyd, 24 La. Ann. 604; Bodenheimer v. Ex'rs of Bodenheimer, 35 La. Ann. 1005; Cutler v. Succession of Collins, 37 La. Ann. 97; Foote v. Godwin, 42 La. Ann. 521, 7 South. 844; Succession of Sinnot v. Hibernia Nat. Bank, 105 La. 711, 30 South. 233; and Hannay v. N. O. Cotton Exchange, 112 La. 1007, 36 South. 831. In the exceptional case, Succession of Kate Townsend, 40 La. Ann. 80, 3 South. 488, the declarations of the person deceased, who had borne an assumed name and whose identity was unknown, were admitted in evidence to establish her identity, because the declarations had been made on occasions not suspicious and referred to matters peculiarly within her knowledge, as to her real name, the place of her birth, and her family relations.

The declaration attributed to the husband of the plaintiff in this case was not admissible in evidence; and, without those declarations, if indeed with them, there is not sufficient evidence to prove that the sale complained of was a simulation.

The judgment is affirmed.