GUERRA et al. v. AMERICAN COLONIAL BANK OF PORTO RICO et al.*

AMERICAN COLONIAL BANK OF PORTO RICO v. GUERRA et al.

Circuit Court of Appeals, First Circuit.
July 26, 1927.

Nos. 1871, 2112.

**1. Courts ⬥264(5)—Bill of intervention to enjoin sale of property of interveners, minor children, to satisfy judgment against their father, held appropriate ancillary proceeding.**

Where execution for unpaid portion of judgment was levied on property inherited by judgment debtor's minor children from their mother, *held*, bill of intervention for injunction against sale of property of children to satisfy judgment against their father was an appropriate ancillary proceeding.

**2. Parties ⬥48—Where children filed bill of intervention to prevent sale of property on execution to satisfy judgment against father, proceedings under intervening petition should have been limited to determining that interveners had title to property involved.**

Where minor children, after execution for unpaid portion of judgment against their father, was levied on property belonging to them as inherited from their deceased mother, filed bill of intervention to enjoin sale of property to satisfy judgment against their father, *held*, proceedings under intervention petition should have been limited to determining that interveners had, by extrajudicial settlement of their mother's estate, title to the property sought to be subjected to payment of judgment against their father.

**3. Jury ⬥28(11)—Children, filing bill of intervention to prevent sale of property to satisfy judgment against father, held not to have waived right to jury trial on issue of their liability for debts of dissolved conjugal partnership.**

Where minor children filed bill of intervention to enjoin sale of property belonging to them as inherited from their deceased mother to satisfy a judgment against their father, *held*, interveners, by invoking equity to prevent misappropriation of their property, did not waive their right to have a jury trial on the issue of their liability for any debts of the dissolved conjugal partnership.

*Certiorari denied 48 S. Ct. 140, 72 L. Ed. ——.

**4. Infants ⬉78(1)—Interests of minor children, intervening to prevent sale of property inherited from mother to satisfy judgment against father, held to require appointment of guardian ad litem (Civ. Code Porto Rico, § 230).**

Where minor children filed bill of intervention to enjoin sale of property inherited from their mother, to satisfy judgment against their father, *held*, interests of such children and their father were conflicting, and a guardian ad litem should have been appointed, under Civ. Code Porto Rico, § 230.

**5. Guaranty ⬉37—Conjugal partnership held not liable on notes under guaranty of maker given by husband alone (Civ. Code Porto Rico, § 1752).**

Conjugal partnership *held* not liable on notes under written guaranty of maker, given by husband alone, particularly in view of Civ. Code, Porto Rico, § 1752, and renewals accepted beyond time for which guaranty was to run.

**6. Guaranty ⬉37—Guarantor held not liable on notes given and accepted after term of written guaranty, notwithstanding provision that maker's signature should bind guarantor.**

Where written guaranty of credit was expressly limited by its terms to a period of two years, *held*, guarantor was not liable on renewals accepted by creditor after such two-year period, notwithstanding provision in guaranty contract to effect that signature of maker of notes should constitute both maker and guarantor joint debtors; such provision having been plainly intended to obviate necessity of guarantor's signature on notes given and accepted within terms of guaranty.

**7. Guaranty ⬉27—Guaranties cannot be extended beyond plain import, without express assent of guarantor.**

It is elementary that guaranties cannot be extended beyond the plain import of the terms thereof, without the express assent of the guarantor.

**8. Guaranty ⬉27—Guaranty contracts are to be given fairly strict construction.**

Instruments of guaranty are to be given a fairly strict construction.

**9. Novation ⬉12—Evidence held to establish that note was given and taken as payment or novation of earlier notes sued on (Civ. Code Porto Rico, §§ 1172, 1173).**

Evidence *held* to conclusively show that particular notes were paid and released by new note, and that novation was effected under Civ. Code Porto Rico, §§ 1172, 1173.

Appeal from and In Error to the District Court of the United States for the District of Porto Rico.

Action by the American Colonial Bank of Porto Rico against Gabriel Guerra and another, wherein Mercedes Guerra y Cobian and others intervened, and action by the American Colonial Bank of Porto Rico against Mercedes Guerra y Cobian and oth-

ers. From an order in the first action, dissolving the injunction and holding property of interveners liable for judgment against named defendant, they appeal; and to review judgment for defendants in the second action, plaintiff therein brings error. Decree in first action reversed and rendered, and judgment in second action affirmed.

Hugh R. Francis, of San Juan, Porto Rico, for Mercedes Guerra y Cobian and others.

Francis E. Neagle, of New York City (Rounds, Dillingham, Mead & Neagle, of New York City, on the brief), for American Colonial Bank.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. These two cases are by agreement submitted together. Both grow out of the relations of Gabriel Guerra to the bank as financial backer of the Specialty Shop for Automobiles, Inc., and have as their present object the payment of alleged obligations of Guerra out of property claimed to have been inherited by his minor children from their deceased mother, Mercedes.

No. 1871 began on February 9, 1921, as an action at law by the bank against Gabriel Guerra and the Specialty Shop, to recover on four notes. The first is dated November 26, 1917, for $6,000; the second, December 4, 1917, for $9,000—both signed by the Specialty Shop only. The third, for $1,100, is dated May 7, 1919, with a Chandler car as collateral security. The fourth, for $44,500, is dated July 20, 1920, reduced by payment to $39,500. These two notes are signed by both defendants. Judgment was sought for the aggregate of these alleged obligations ($55,600), with interest at the rate of 8 per cent. from January 31, 1921.

Gabriel Guerra's alleged liability on the first two notes is grounded on a "notarial document," executed by the bank, Gabriel Guerra, and the Specialty Shop, November 26, 1917, by which, as is alleged, the defendant Guerra made himself "responsible as principal joint debtor" for said notes and the agreed interest thereon. This instrument recites that the bank had agreed to extend a credit of $15,000 to Guerra and the Specialty Shop on terms which, so far as now material, are as follows:

"The deliveries of moneys by reason of this credit shall be made by the bank by means of promissory notes to the order of the bank, which shall be signed by the Specialty

Shop for Automobiles, Inc., for the terms and interest that may be agreed upon in each case at the time of the execution of the obligation and the delivery of the money, although the term shall not exceed the period of two years, reckoned from this date—that is, from the 23d of November of the year 1917—which date is fixed for the final liquidation of the credit, except that such period may later be extended by agreement of both parties.

"The said promissory notes may be signed only by the Specialty Shop for Automobiles, Inc., but it shall be sufficient that in the promissory note the statement be made that it refers to the present credit, so that it may have the same force and effect as if it had been signed by the other joint debtor Gabriel Guerra Acosta, who to that end gives the necessary and irrevocable power to the Specialty Shop for Automobiles, Inc., to sign the said promissory notes and to receive the amounts thereof, and it is understood that, even though they may not bear the signature of Mr. Guerra, he and the Specialty Shop for Automobiles, Inc., constitute themselves as joint debtors, without any other limitation, save that the amount to be owed hereunder shall not exceed the sum of $15,000, and that the statement be made in the promissory notes to be signed that they relate to this credit."

No extension of this instrument is alleged or proved; but the notes of the Specialty Shop given under it were extended and interest paid by the Specialty Shop to January 31, 1921.

The Specialty Shop was defaulted, and on March 25, 1922, adjudicated bankrupt. The record does not disclose what assets, if any, it had available for its creditors.

Guerra's answer sets up that the three notes, of $6,000, $9,000, and $1,100, had all been extinguished by the fourth note of $44,-500, which is pleaded as payment of the other three notes, or a novation of them and of other obligations of the Specialty Shop; that, as $5,000 had been paid on the $44,500 note, the defendant was liable for $39,500 only. Guerra also pleaded that under the instrument of guaranty he never authorized the bank to take demand notes from the Specialty Shop, and that said notes were not presented for payment within the two years specified in said instrument.

The case was tried by the court (Odlin, J.) without a jury; but no written stipulation waiving a jury was filed under R. S. § 649 (Comp. Stat. § 1587). Bond v. Dustin, 112 U. S. 604, 5 S. Ct. 296, 28 L. Ed. 835.

The court entered judgment for the full amount claimed, $55,600, with interest from January 31, 1921. Execution issued, under which the marshal, on June 5, 1923, collected an attached deposit of Guerra in the National City Bank of New York to the amount of $4,469.05.

On June 7, 1923, execution for the unpaid portion of the judgment against Guerra, to the amount of $51,130.95, was levied on attached properties, including No. 20 Tetuan street, San Juan. On July 11, 1923, Mercedes, Gabriel, and Arturo Guerra—minors represented by their father and natural guardian Gabriel—filed in the same case a "bill of intervention," setting up that their mother, Mercedes, died intestate in New York City on December 18, 1919; that the interveners were the owners of No. 20 Tetuan street, acquired by inheritance from their mother, as appeared by public deed executed on December 9, 1920, and recorded in the registry of property on February 10, 1921; that they were not made parties defendant in said action, so as to have their day in court; that it appeared on the face of the complaint that the fourth cause of action therein was a promissory note for $44,500, executed July 20, 1920, by their father, after the death of their mother.

[1] The purpose of the bill of intervention was to obtain an injunction—at first preliminary, then permanent—against the sale of the property of the children to satisfy the judgment against their father. It was an appropriate ancillary proceeding in equity to prevent the judgment from being enforced against the property of others than the defendant. Krippendorf v. Hyde, 110 U. S. 276, 4 S. Ct. 27, 28 L. Ed. 145. It raised no issue, and none is now before us, as to the validity of the judgment against Gabriel Guerra.

The gist of the petition was that the children's property could not be subjected to payment of any debts until those debts had been established against them, or against the property inherited by them, by due process of law.

The bank promptly (12 days later, on July 23, 1923) adopted the theory of the interveners as to its proper legal remedy against the property inherited by them from their deceased mother by bringing against them a suit at law—now here as No. 2112. In this suit the father, Gabriel, is joined as natural guardian of the three minors, but not as alleged debtor, surviving partner of the conjugal partnership, or administrator of his deceased wife's estate.

The complaint in this suit sets forth that during the conjugal partnership, Gabriel, as administrator thereof, executed and delivered to the bank five promissory notes, on the following dates and the following amounts, to wit:

"Note dated July 7, 1919, for the sum of $3,000.

"Note dated July 18, 1919, for the sum of $12,000.

"Note dated September 8, 1919, for the sum of $11,700.

"Note dated October 1, 1919, for the sum of $7,500.

"Note dated October 29, 1919, for the sum of $1,200.

"That the note herein referred to, dated September 8, 1919, for the sum of $11,700, was subsequently reduced by payment on account thereof to the sum of $6,500. That at the date of the death of the said Mercedes Cobian Romeu the defendant Gabriel Guerra Mondragon y Acosta and his wife Mercedes Cobian y Romeu were indebted to the plaintiff on account of the notes hereinbefore referred to in the sum of $30,200, no part of which has ever been paid, except the sum of $500, and that the said defendant Gabriel Guerra Mondragon y Acosta and the estate of his deceased wife Mercedes Cobian y Romeu are now indebted to the plaintiff on account of the notes hereinabove referred to in the sum of $29,700, with interest thereon at the rate of 8 per cent. per annum from the 31st day of January, 1921, to the date of this complaint."

The complaint also covers the two notes of $6,000 and $9,000, grounding liability therefor on the above-described instrument of November 26, 1917. This makes a total of $44,700, for which, with interest at 8 per cent. from January 31, 1921, judgment was sought. It is then alleged that subsequent to the death of Mrs. Guerra, by order of the district court of San Juan, the minor defendants were declared her heirs, and by deed the minors, acting by their judicial defensor (guardian ad litem), purported to make a division of the properties, under which the heirs received $32,239.31 as their mother's share in the profits of the conjugal partnership, and also $37,330 as the capital furnished by their mother at the time of her marriage, a total of $69,569.31; that at the time of this partition deed Gabriel had title in his own name to each of the said properties, and none were recorded as the separate property of his wife.

The underlying theory of this suit is that the minors had title to property applicable to the payment of the alleged debts of the conjugal partnership. It is an attempt to hold the heirs or succession of Mrs. Guerra under Civil Code, §§ 664, 665:

"Sec. 664a. Succession is the transmission of the rights and obligations of a deceased person to his heirs.

"Sec. 664b. Succession also means the properties, rights and charges which a person leaves after his death, whether the property exceeds the charges or the charges exceed the property, or whether the said person leaves only charges and no property.

"Sec. 664c. Succession includes not only the rights and obligations of the deceased, in the condition in which they existed at the time of his death, but it also includes the property belonging to such succession after the same is opened, and the charges and obligations inherent therein.

"Sec. 664d. Succession also signifies the right by virtue of which an heir may take possession of the property of the deceased in accordance with law.

"Sec. 665. The rights to the succession of a person are transmitted from the moment of his death."

But minors may accept inheritances (Civ. Code, § 959) only by duly authorized tutor (guardian), under Civ. Code, § 282, par. 10. If there was no enforceable debt, the case ends; it becomes unnecessary to determine any question as to the title of the defendants.

So far as appears, nothing was done with this new suit for more than two years. On August 24, 1925, an amended complaint was filed. On June 28, 1926, an amended answer was filed to this amended complaint. The case came to trial on June 28, 1926, and a verdict was ordered and returned for the defendants, on grounds stated below.

Reverting to No. 1871—on the filing of the bill of intervention on July 11, 1923, a restraining order was issued, enjoining the marshal from selling the property in question until further order of the court. On November 26, 1923, the bank filed motions to dismiss and to dissolve the restraining order. These were finally disposed of about a year later, on November 29, 1924, by an order that the bank should answer the intervening petition and the matter stand for hearing. On December 6, 1924, the bank filed an answer, admitting substantially all the allegations of fact, but setting up that the deed to the interveners of No. 20 Tetuan street was void for lack of "a liquidation of the conjugal partnership between Gabriel and his deceased wife, Mercedes," and because "no provision has been made for payment of the debts of

said conjugal partnership." It admitted the execution on July 20, 1920, of the note for $44,500, and alleged that this note—

"was a renewal of the following notes in favor of plaintiff, to wit:

"A note for $30,200, dated January 9, 1920, signed by Gabriel Guerra, on which $500 was paid January 13, 1920, reducing it to $29,700.

"A note for $1,308.95, dated February 16, 1920, signed by Gabriel Guerra.

"A note for $4,500, dated March 29, 1920, signed by A. S. Belaval and Eduardo Acuna.

"A note for $4,500, dated March 29, 1920, signed by A. S. Belaval and R. Alvarez Torres.

"A note for $1,533.75, dated May 22, 1919, signed by A. S. Belaval and Specialty Shop for Automobiles, Inc. And the past due and unpaid interest on said notes.

"That the note for $30,200, dated January 9, 1920, herein above referred to was a renewal of the following notes, each signed by Gabriel Guerra y Acosta, and each drawn to the order of the plaintiff, to wit:

"Note dated October 29, 1919, for $1,200.

"Note dated July 18, 1919, for $12,000.

"Note dated July 17, 1919, for $3,000.

"Note dated October 1, 1919, for $7,500.

"Note dated September 8, 1919, for $11,700, on account of which note the sum of $5,200 had been paid, and on which there remained due and unpaid the sum of $6,500.

"Further answering said paragraph 7, it alleges that at the death of Dona Mercedes Cobian y Romeu the defendant Gabriel Guerra owed the plaintiff the sum of $30,200 on account of the notes hereinbefore referred to, plus the sums of $6,000, $9,000, and $1,100, respectively, covered by the first, second, and third causes of action in the complaint, no part of which has been paid, except the sum of $500 paid January 13, 1920, as heretofore set forth."

The bank's claims, thus sought to be enforced against the minor heirs by this answer, were precisely the same as those set up in its pending lawsuit, except that by this answer it asserted liability on the collateral note of $1,100 dated May 7, 1919. Why this note, if not paid, was not included in the lawsuit nowhere appears. It thus asserted and now asserts the right to pursue these children, at law and in equity, at the same time, for substantially the same thing.

Counsel for the children adhered to his theory (that the intervening petition involved nothing but the right of the bank to satisfy a judgment against the father out of property of the children) by moving to strike out the allegations in the answer relative to the alleged basis of the $44,500 note. This motion was denied, and the matter was heard on evidence on December 10, 1924. The court below (Odlin, J.) held that the notes outstanding when Mrs. Guerra died had not been extinguished by payment, novation, judgment against Guerra, or otherwise, and reached the conclusion that the sale under the outstanding execution against Gabriel Guerra should proceed, with the proviso that any surplus above $45,800 be paid to the interveners. This amounts to ruling that a judgment and execution, based (in major part) of record on the note of $44,500, was, in law and in fact, based on earlier notes, dated in 1919, stamped "paid," and returned to the Specialty Shop months before the note sued upon was given. How this result of $44,800 was computed is not clear. It is clear that the judge overlooked the fact that the bank had already collected on execution $4,469.05. But in the view we take of the controlling issues, that and other possible errors in computation become immaterial.

From the order dissolving the injunction, and holding their inheritance from their mother liable for $44,800, the children appealed to this court. Their contentions on this appeal are that the bank has obtained no judgment or other enforceable process against them or their inheritance from their mother's estate; that the proceedings under the intervention petition should have been limited to enjoining satisfaction of the judgment against Gabriel Guerra out of property belonging, at least prima facie, to the minor heirs of the deceased member of the conjugal partnership. Capo v. Fernandez, 27 Porto Rico, 656; Garcian v. Registrar of Guayama, 27 Porto Rico, 575. Otherwise stated, that the bank's appropriate remedy to subject any assets of the conjugal partnership to payment of any enforceable debts of the partnership was under its pending suit at law. Apparently the bank also had a remedy under R. S. §§ 1562, 1599 et seq.

[2-4] We think these contentions of the appellants must be sustained. The proceedings under the intervening petition and its answer should have been limited to determining the facts alleged (in effect undisputed), that the interveners had, by an extrajudicial settlement of their mother's estate, a title to the property sought to be subjected to the payment of the personal judgment against their father. By invoking equity to prevent the misappropriation of their property on an execution running against one (legally) a stranger to them, the interveners did not

waive their right to have a jury trial on the question of their liability for any debts of the dissolved conjugal partnership. It is also fairly clear that the interests of the children and of their father were conflicting, thus requiring the appointment of a guardian ad litem under Civil Code, § 230, in any proceeding seeking to subject their inheritance to liability for debts of the dissolved financial partnership. The bank's answer was not a counterclaim, to which the interveners might have answered, and thus joined issue on their liability for the claims made by the bank. There was no judgment or execution against the heirs or succession of Mrs. Guerra. The decree appealed from was to the effect that an execution against Gabriel Guerra might (in main part) be levied directly upon the property of persons not named in that judgment and execution. There was no finding that the property in question was that of the judgment debtor, or was not, as the interveners claimed, their property, even if possibly liable, on appropriate legal proceedings, for debts of the conjugal partnership. No such anomalous and irregular proceedings can be sustained.

Learned counsel for the bank find themselves forced by the insuperable difficulties of their case into contending that the judgment against Guerra was conclusive upon the minor heirs and succession of his deceased wife. This extraordinary proposition is claimed to be supported by cases cited from jurisdictions in which the doctrine of community property prevails. Rusk v. Warren, 25 La. Ann. 314; Simpson v. Bulkley, 140 La. 589, 73 So. 691, L. R. A. 1917C, 494; Demarets v. Demarets, 144 La. 173, 80 So. 240; Carter v. Conner, 60 Tex. 52; Barrett v. Eastman, 28 Tex. Civ. App. 189, 67 S. W. 198; Enriquez v. Victoria, 10 Philippine R. 16; Enriquez v. Go-Tiongco, 220 U. S. 307, 31 S. Ct. 423, 55 L. Ed. 476.

It is conceded that no decision of the Supreme Court of Porto Rico supports this proposition. It is enough now to note that the decisions relied upon are not, in our view, on the facts before this court, in point, and that expressions, if not decisions, are found in the reports of the Supreme Court of Porto Rico, which seem inconsistent with the doctrine that, after a conjugal partnership is dissolved by the death of one of the spouses, suit to recover a debt owed by that partnership need be brought only against the survivor. Arvelo v. Banco Territorial, 25 Porto Rico, 677; Lopez v. Quinones, 30 Porto Rico, 317; Cortez v. Diaz, 31 Porto Rico, 433; Sosa Fernandez v. Munoz, 36 Porto Rico, ad. sh. No. 3, p. 465; Esteves v. Registrador, 36 Porto Rico, ad. sh. No. 1, p. 27.

Cf., also, Civil Code, § 1328, which limits the power of the husband to sell or incumber the conjugal real estate without the express consent of the wife.

The bank's contention in No. 1871 is not even arguable, except on the theory that the judgment against the the father is not conclusive upon the bank; that the bank is entitled to go back of the judgment and contend that the note of $44,500 is a renewal, as distinguished from payment or novation, of earlier notes. Moreover, the court below held the judgment not conclusive, and the bank took no appeal from this ruling.

Of practical, though perhaps not of legal, significance is the fact that the defenses held good below and in this court (post) in No. 2112 would have required the same result in No. 1871 as to everything except the note for $1,100. We note, also, that by the extrajudicial settlement of December 9, 1920, of the conjugal partnership, the surviving husband, Gabriel, received $37,239.32; that he has died pendente lite; that it is stipulated in No. 2112 that he left no estate, and that his children have not accepted any inheritance from him. What became of this substantial property of his does not appear; but the judgment against him, however unsound as to the notes of $6,000 and $9,000, is, on these records, res adjudicata as between him and the bank.

The result is that in No. 1871 the decree must be vacated, and a decree entered permanently enjoining the sale of the property set off to Mrs. Guerra's children under the judgment against Gabriel Guerra, with costs to the appellants.

It remains to deal with No. 2112: The answer filed June 28, 1926, in addition to general denials, sets up that the notes declared on, all of which are dated prior to Mrs. Guerra's death on December 18, 1919, were extinguished by payment or novation on January 9, 1920, by a note of $30,200, which note, with other obligations, was extinguished by a new note for $44,500 on July 20, 1920. The defendants also deny liability on the two demand notes of $6,000 and $9,000, given under the notarial instrument of November 26, 1917, on the ground of nonconformity with the terms of this instrument of guaranty. They allege that the property in question was the private and separate property of their mother Mercedes. They also plead that the causes of action are barred by the three-year statute of limitations (pre-

scription). Article 950 of the Code of Commerce.

As stated above, the trial resulted in a directed verdict for the defendants, the court holding (Wells, J.) the defenses of novation and prescription (the statute of limitations) both made out on the bank's own testimony and the documents. The bank brought the case here on a writ of error. We find it necessary to deal with but two questions:

(1) Was there liability of Mrs. Guerra's heirs or succession under the guaranty of November 26, 1917, on the demand notes of $6,000 and $9,000 signed by the Specialty Shop?

(2) Were the notes declared upon, dated in 1919, before Mrs. Guerra's death, outstanding and enforceable when this suit was brought on July 23, 1923? Otherwise stated, was there novation or payment by the new notes, given after Mrs. Guerra's death?

[5] (1) As noted above, it is alleged and proved that these two notes of $6,000 and $9,000, signed by the Specialty Shop only, were renewed by the Specialty Shop from time to time, and interest paid thereon up to January 31, 1921.

We think it plain that, when this suit was filed, there was no liability of the conjugal partnership under this instrument. Construing the instrument as a whole, and in the light of the conduct of the parties and of the pertinent evidence (28 C. J. 93, 934), the agreement is plainly a guaranty by Guerra of a credit extended by the bank to the Specialty Shop. The parties obviously contemplated that the Specialty Shop should be, as it was, managed by Belaval and others than Guerra; Guerra being absent from time to time (and apparently much of the time) in the United States. In their testimony, the bank officials referred to this instrument as a "guaranty."

[6] The bank's contention that its acts, in extending beyond the two-year period, on the Specialty Shop's request, the demand notes taken by it, did not affect Guerra's liability, is grounded on the provision in the second paragraph of the instrument (quoted above), to the effect that signature by the Specialty Shop only should constitute the Specialty Shop and Guerra joint debtors. But, properly analyzed, this is but a provision for business and procedural convenience; it obviated the necessity of getting Guerra's signature on the notes, and undoubtedly authorized suit against him as a joint debtor, on any obligations of the Specialty Shop, given and accepted within the terms of the guaranty. But it did not change the essential nature of the agreement into a practically unlimited joint contract by Guerra and the Specialty Shop. It left unaffected the vital provision—to the effect that the term of the contemplated notes shall not exceed the period of two years from November 23, 1917, "which date is fixed for the final liquidation of the credit."

No effect whatever would be given to this plain and fundamental provision if we adopted the contention of the bank, that this instrument authorized it to advance the full amount of $15,000 to the Specialty Shop on demand notes, signed by the Specialty Shop only, and then to permit the Specialty Shop to renew such notes from time to time and pay the interest thereon up to January 31, 1921 (more than three years) all without notice to Guerra, and without obtaining any agreement for extension of the guaranty, as expressly provided for in the instrument.

[7, 8] It is familiar and elementary law that guaranties cannot be extended beyond the plain import of the terms thereof without the express assent of the guarantor and that such instruments are to be given a fairly strict construction. 28 C. J. p. 9351; Lascelles v. Clark, 204 Mass. 362, 373, 90 N. E. 875.

In our view, without resorting to the rule of strict construction, we think that there was no liability of the conjugal partnership under this instrument when these suits were brought. Civil Code, § 1752, provides:

"The extension granted to the debtor by the creditor, without the consent of the surety, extinguishes the security."

[9] (2) Coming now to the transaction of the $44,500 note of July 20, 1920, it is clear, on the documents and on the bank's own evidence, that this note was given and taken as a payment or novation of the earlier notes sued upon. Some of the old notes covered by this new note were time notes, of which some or all had had one or more extensions; at least one old note carried interest at 9 per cent., while the new note was at 8 per cent.; some of them were notes with collateral; some of them were notes authorizing the holder to appear in any court of Porto Rico and confess judgment, as did the new note of $44,500; one was a joint and several note of Belaval and Torres, running to the bank; another was a like note of the same promisors, running to the Specialty Shop, and indorsed in blank by the Shop; all of them were given up and stamped by the bank as paid. Corresponding entries were made in the bank's books. The new note for $44,-500, of course, was a negotiable instrument

transferable at the will of the holder to any third party. In fact, it was accompanied by an oral agreement that it should be paid at the rate of $1,000 a week, and five payments were actually made thereon. On the new note the bank received and credited partial payments; it then brought suit and obtained judgment on the unpaid balance, and on execution, collected part of that judgment.

We see no escape from the conclusion of the court below (Wells, J.) that this transaction must be held a novation.

The Porto Rican statute law relative to novation is as follows:

"Civil Code, § 1172. In order that an obligation may be extinguished by another which substitutes it, it is necessary that it should be so expressly declared, or that the old and new be incompatible in all points.

"Sec. 1173. Novation, consisting in the substitution of a debtor in the place of the original one, may be made without the knowledge of the latter, but not without the consent of the creditor."

Under these provisions, the knowledge and assent of the original debtor is not required. Compare 29 Cyc. pp. 1130, 1132; Stowell v. Gram, 184 Mass. 562, 563, 69 N. E. 342. The new obligation was entirely incompatible with the old obligations, and was so treated by the parties. Manrique v. Mangual, 28 Porto Rico, 35, 38; 3 Williston, Contracts, §§ 1865–1875; In re Ransford (C. C. A.) 194 F. 658, 662.

The result is the same, whether the extinguishment of the old obligations by the $44,500 note be called a novation, a merger or payment. 3 Williston, Contracts, §§ 1918, 1920 a, et seq. The essence is that the old obligations were thereby ended, and all the rights of the bank were included in the new note, which, in turn, was merged into the judgment against Guerra and the Specialty Shop; on this judgment, execution issued, and was partially satisfied, and proceedings begun to enforce payment of the balance. Yet, on the plaintiff's theory, it may still resort to all the original parties liable. Guerra, Torres, Belaval, Acuna, the Specialty Shop, and the succession or heirs of Mrs. Guerra, obtaining a new judgment against each, in accordance with the original alleged obligation of each. It is difficult to imagine a theory more productive of business chaos and of confusion of legal rights and remedies. We cannot adopt it.

While not necessary to the conclusions we have reached, we note that the evidence of the transactions between the bank and the various parties in interest is extraordinarily confused and confusing. We are unable to reconcile the notes pleaded as signed or guaranteed by Guerra prior to his wife's death with the evidence offered, much less with the actual notes, copies of most of which appear in one or both records. It appears from the testimony of the bank's vice president that the bank had "a number of different kinds of loans to the Specialty Shop, in addition to having those loans which were guaranteed by Mr. Guerra, or guaranteed by the escritura given by Mr. Guerra." "Escritura" refers to the document of November 26, 1917. "We advanced them money against cars, automobile tires, and as a car was sold they were supposed to give us back the amount we advanced against that particular automobile. The same way with tires. Now, when the question came of paying the money to pay off another obligation, we applied simply any amount of money that we could succeed in getting out of it, which amount of money was applied as suggested by the Specialty Shop."

This course of business furnishes a partial explanation of the confusion and inconsistencies in the pleadings and in the evidence. But, while we do not put our decision on that ground, it is at least doubtful whether the bank proved any such amount of indebtedness accruing prior to Mrs. Guerra's death as it claimed in its pleadings, and as, in No. 1871, was found by the court below.

The final paragraph in the brief in No. 2112 of the bank's able and learned counsel is a further illustration of the conflict and confusion in these records:

"It is submitted that a proper determination of these cases, No. 1871 and No. 2112, would be to affirm the decree in No. 1871, modified, so as to provide that out of the community property now registered in the names of the defendants by title of intestate inheritance the plaintiff be allowed to collect up to the amount of $35,275.64, with interest on $24,700 thereof from October 21, 1920, and with interest on $10,575.64 thereof from January 31, 1921, and that the judgment in No. 2112 be reversed, and a new trial directed in accordance with the principles of law laid down by the decision of this court in No. 1871. The effect of this will be that there will never be a new trial in No. 2112, as it will be rendered unnecessary."

In No. 2112, the judgment of the District Court is affirmed, with costs to the defendants in error.

In No. 1871, the decree of the District Court is reversed, and it is decreed that the

sale of the property set off to the children of Mrs. Guerra be permanently enjoined, with costs to the appellants.