41 So.2d 220

## HUMPHREYS v. ROYAL.

### No. 38657.

Feb. 14, 1949.

Rehearing Denied June 16, 1949.

Lee & Emery, Shreveport, for plaintiff-appellee.

Cook, Clark & Egan, Shreveport, for defendant-appellant.

Blanchard, Goldstein, Walker & O'Quin, Wilson, Abramson & Maroun, and W. D. Goff, Jr., Shreveport, amici curiae.

FOURNET, Justice.

This is a petitory action wherein the plaintiff, L. T. Humphreys, seeks to recover a half interest in the NW¼ of the SE¼ of Section 7, T. 20 N., R. 12 W., Bossier Parish, Louisiana, acquired by him from Gertrude Fields Payne, divorced wife of Isiah Payne, and now in the possession of the defendant, Joe Webb Royal, under a deed executed by Payne subsequent to the divorce.

The record shows that Isiah Payne was married to Gertrude Fields in the County of Leflore, Mississippi, on October 15, 1911, and that he moved to Louisiana after his return from World War I, probably in 1919, when he and his wife separated. On October 8, 1936, he purchased, by authentic act, duly recorded, and for a consideration of $600, $140 of which was paid in cash and a mortgage given for the remaining $460, the land involved in this controversy. In this act is contained the stipulation that the Federal Land Bank of New Orleans is conveying all of its rights in and to the property unto "Isiah Payne, *a single man,* resident of Caddo Parish, State of Louisiana." (Italics ours). The defendant, Joe Webb Royal, having been informed by Mr. H. M. Gatti, agent of the Federal Land Bank of New Orleans that the bank had no property for sale but that he might take over the Payne property by assuming the unpaid mortgage and thereby avoid the expenses incidental to foreclosure proceedings since the bank was compelled to institute such proceedings because of Payne's failure to meet his obligations, acquired the property from Payne on November 10, 1941, by authentic act for the assumption of the mortgage and a cash consideration of $30. In this deed Payne declared that he was *a single man.* In the meanwhile, during 1938, Payne had instituted suit for divorce against his absentee wife and had, on December 2, 1938, obtained a judgment of divorce, which judgment, however, was never recorded in the Conveyance Office of Bossier Parish. Soon after the development of the Benton Oil Field, in which area this property lies, the plaintiff, obviously with a knowledge of all of the facts, sought out Gertrude Fields Payne at her residence in Mississippi, and, on April 26, 1946, purchased from her an undivided half interest in and to the property hereinabove described. Within the month he instituted this suit seeking to be recognized as the owner of this half interest. The defendant, relying on the law of registry, denied the plaintiff's ownership, pleading, in the alternative, that in the event the court finds the plaintiff does own such an interest, that he be given

judgment in reconvention in the sum of $630.35, representing half of the expenses incurred by him in repairing and improving the property and in making scheduled payments to the Federal Land Bank and in paying taxes thereon.

There was judgment in the lower court recognizing the plaintiff to be the owner of an undivided half interest in this property, and awarding the defendant, as the plaintiff in reconvention, the sum of $224.28, but non-suiting his reconventional demand for the value of the improvements placed on the property; reserving to him, however, the right to urge his claim to half of the enhanced value thereof because of such improvements. From this judgment the defendant has appealed. Answering the appeal, the plaintiff asks that all of the demands of the defendant under his reconventional demand be rejected.

■ Under our Civil law system, the property above described, acquired by Payne during the existence of his marriage to Gertrude Fields Payne, belongs to the community of acquets and gains that existed between them at the time it was acquired, of which community Payne was the head and master and, as such, vested with the exclusive right to sell or otherwise alienate and encumber it. Articles 2399, 2402, and 2404 of the Revised Civil Code. This right, however, terminated upon the dissolution of the marriage when Payne divorced his wife and she was,

thereafter, vested with an unrestricted title to an undivided half interest in the property. Article 2406. The only question that is to be determined, therefore, is whether the wife or her transferee here can prevail in this case in view of the public policy of this state that in order to affect third parties all sales of, transactions, or judgments touching upon or affecting real rights or immovable property must be recorded.

■ This public policy is based upon the pronouncements to be found in our Revised Civil Code of 1870 providing that "No notarial act concerning immovable property shall have any effect against third persons, until the same shall have been deposited in the office of the parish recorder, or register of conveyances of the parish where such immovable property is situated." Article 2264. The same rule applies to all sales made by sheriffs or other officers by virtue of any execution or other order of court, to all marriage contracts and all final judgments affecting real property. Articles 2265 and 2266. In the latter article it is declared that contracts, sales, and judgments not so recorded are *utterly null and void, except between the parties thereto,*" and, as was very aptly pointed out in the case of Schneidau v. New Orleans Land Co., 132 La. 264, 61 So. 225, 230, the lawmakers thus provided "a method intended to be simple, sure, and inflexible, whereby those who desire to invest their money in real

estate may be able to find, upon the public records, the evidence, and all the evidence, needed to establish or defend the title thereto." (Italics ours.)

■ These articles are clear and free from any ambiguity and are subject to no exceptions other than that they do not apply "between the parties thereto." It therefore follows that the unrecorded divorce judgment affecting the immovable property in controversy is utterly null and void as to the defendant here, a third party.

We do not think the decision of this court in the case of Succession of James, 147 La. 944, 86 So. 403, is controlling here, as contended by the plaintiff. In that case the court, after the death of the wife, denied a creditor's right to enforce a mortgage against the community to the prejudice of the husband's interest therein on a debt that had been contracted by the wife in her own name as a femme sole during the existence of the marriage in the husband's absence and without his knowledge. Consequently Articles 2265 and 2266 had no application. No judgment had been obtained in that case, as in the case at bar, affecting the immovable property.

For the reasons assigned the judgment appealed from is annulled and set aside and it is now ordered that the plaintiff's suit be dismissed, at his cost.

PONDER, J., absent.

HAWTHORNE, J., dissents and assigns written reasons.

HAWTHORNE, Justice (dissenting).

In Successsion of James, 147 La. 944, 86 So. 403, 405, the wife during her marriage acquired in her maiden name and as femme sole certain immovable property, which under our law was property of the community which existed between her and her husband. Subsequently she mortgaged the property, and again she used her maiden name and represented herself as femme sole. After her death a mortgagee named in a mortgage which she had so granted sought to satisfy his claim in the succession, to the prejudice of the husband's one-half interest in the property, relying on the law of registry that no sale or encumbrance of immovable property shall affect third persons unless recorded in the proper office. In denying to the mortgage creditor the right to satisfy his claim from the husband's interest, this court said: "If, then, it is the period of time when the purchase was made, which is 'alone to be attended to,' and not the name of the purchaser, *the only question remaining is whether it devolves upon a person who deals with a purchaser of immovable property to find out whether he or she was married or single at the date of the purchase, and we must hold in the affirmative on that question,* or reverse a long-established jurisprudence to the effect that one cannot acquire a title to the

interest of a deceased wife, to the prejudice of her heirs, by a purchase from the surviving husband, even though the title to the entire property stands in his name." (Italics mine.)

This court recognized in that case that the rule that the time of the purchase alone is attended to in determining whether property is community may conflict in many instances with the law of registry, and the conflict was resolved in favor of the community owner rather than in favor of the one relying on the registry. To me no sufficient or satisfactory reasons have been advanced in the instant case which warrant resolving the conflict the other way.

The judgment of divorce in this case does not describe or make any reference to any property whatsoever, and contains nothing to contradict the declaration in the husband's deed of acquisition that he was a single man at that time. Therefore, if we assume as a fact that this judgment was recorded in the conveyance records of the parish wherein the property was located prior to the sale made to the defendant herein—which the majority opinion holds was necessary—, the defendant would still acquire a valid title as to the wife's interest in the property, because he could rely on the statement in his vendor's deed of acquisition that he was a single man since there is nothing in the registry to contradict it, and, if this were true, the wife had no interest in the property, for under the law it is the period of time which is alone to be attended to in determining the character of property, that is, whether it belongs to the community or to the husband's separate estate.

Upon the dissolution of the community either by death of the husband or by divorce, the wife has a vested interest in one-half of the community property, and the majority holding, by applying the law of registry, has the effect of permitting the husband in this case, by his false and untrue statements made in the deeds that he was a single man, to take away from the wife her vested interest in the property. Likewise, if the wife had died, leaving minor heirs born of the marriage, their interest, inherited from their mother, would also be divested.

In the case at bar, the trial judge informs us in his reasons for judgment that in the divorce suit service was on a curator ad hoc, and apparently the wife did not learn of the suit for divorce until 1944, several years after the conveyance by the husband of the property on November 10, 1941, to the defendant herein. How could the wife, who had no actual knowledge of the divorce, record this judgment in time to protect her interest in the community property?

In my opinion, the preservation of the community interest is paramount, and should prevail against the proposition of law dealing with the protection of third persons by registry, and, as stated in the

James case, supra, it is the duty of a person who deals with a purchaser of immovable property to find out whether he or she was married or single at the date of such purchase.

For these reasons, I think the judgment of the district court should be affirmed, and accordingly I respectfully dissent from the holding of the majority.

Rehearing denied; HAMITER and HAWTHORNE, JJ., dissenting.