300 So.2d 213 (1974)
Hazel Gentry GREGORY, Plaintiff-Appellant,
v.
James L. WOMACK et al., Defendants-Appellees.
No. 12369.
Court of Appeal of Louisiana, Second Circuit.
September 4, 1974.
Rehearing Denied October 1, 1974.
Writ Refused November 15, 1974.
Cameron C. Minard, Columbia, for plaintiff-appellant.
Gaharan, Richey & Wilson by Joseph Wilson, Jena, for defendants-appellees.
Before AYRES, PRICE and HALL, JJ.
Rehearing En Banc. Denied October 1, 1974.
*214 PRICE, Judge.
Hazel Gentry Gregory brought this action seeking to be recognized as the owner of an undivided one-half interest in a tract of land in Caldwell Parish, Louisiana. Plaintiff also requests the court order a partition by licitation in the event her ownership is recognized. The defendants named in plaintiff's action are James L. Womack, who purchased the subject tract at a sheriff's sale, and his subsequent vendees of portions of the property, Andy and Jacqueline McLain Riser, and Willie Earl Cowart.
Defendants filed an exception of no cause or right of action asserting that they acquired their respective interests in the subject property in good faith without knowledge of the facts and circumstances giving rise to plaintiff's right of ownership, and therefore are protected by the public records doctrine of the State of Louisiana.
The trial court sustained the exception of no cause of action and dismissed plaintiff's suit. Plaintiff has appealed from the judgment of the trial court sustaining the exception of no cause or right of action and dismissing her suit.
Plaintiff's action is based on the following asserted or undisputed facts:
1. That she was married to Solon C. Dortch and that the property involved in this action was acquired during this marriage as community property.
2. That she obtained a judgment of divorce on May 20, 1965 in the district court for Galveston County, Texas.
3. That Solon C. Dortch, on September 4, 1970, executed a promissory note secured by a mortgage encumbering the subject property, reciting therein that he was married to and living with plaintiff.
4. That the Olla State Bank, the holder of the note, had actual knowledge that the parties were divorced.
5. That Dortch defaulted on the note and the property was sold by the sheriff under foreclosure proceedings on October 27, 1971, to James L. Womack.
6. That James L. Womack subsequently conveyed portions of the property to other defendants in this action.
7. That the Texas judgment of divorce is not now, nor has it ever been, placed of record in Caldwell Parish, Louisiana.
The trial court in its reasons for judgment found the facts and circumstances presented to be analogous to and controlled by the decision of the Supreme Court in the case of Humphreys v. Royal, 215 La. 567, 41 So.2d 220. We agree with this conclusion and affirm the judgment appealed from.
It is apparent from plaintiff's pleadings the defendants are third parties whose acquisition of title has been made solely on the basis of the matters reflected of public record. The knowledge possessed by the Olla State Bank, the mortgagee and seizing creditor, who is not a named defendant in this action, has no effect on the purchaser at the sheriff's sale and his subsequent vendees.
In Humphreys v. Royal, supra, a married man acquired real estate reciting that he was a single man. He thereafter obtained a divorce against his absentee wife. The judgment was never recorded. A third party, Royal, purchased the property from the husband by a cash and assumption deed in which it was recited that the husband was a single man. Another party, Humphreys, acquired the divorced wife's interest in the property and brought an action seeking recognition of his ownership in the subject tract. The Supreme Court, in reversing the trial court, found a third party is not affected by an unrecorded judgment of divorce which has the effect of dissolving the community and vesting the unrestricted title to an undivided half interest in all properties in the wife. The Court *215 reviewed the law of registry and its purpose as follows:
"This public policy is based upon the pronouncements to be found in our Revised Civil Code of 1870 providing that `No notarial act concerning immovable property shall have any effect against third persons, until the same shall have been deposited in the office of the parish recorder, or register of conveyances of the parish where such immovable property is situated.' Article 2264. The same rule applies to all sales made by sheriffs or other officers by virtue of any execution or other order of court, to all marriage contracts and all final judgments affecting real property. Articles 2265 and 2266. In the latter article it is declared that contracts, sales, and judgments not so recorded are `utterly null and void, except between the parties thereto,' and, as was very aptly pointed out in the case of Schneidau v. New Orleans Land Co., 132 La. 264, 61 So. 225, 230, the lawmakers thus provided `a method intended to be simple, sure, and inflexible, whereby those who desire to invest their money in real estate may be able to find, upon the public records, the evidence, and all the evidence, needed to establish or defend the title thereto.'
"These articles are clear and free from any ambiguity and are subject to no exceptions other than that they do not apply `between the parties thereto.' It therefore follows that the unrecorded divorce judgment affecting the immovable property in controversy is utterly null and void as to the defendant here, a third party.
"We do not think the decision of this court in the case of Succession of James, 147 La. 944, 86 So. 403, is controlling here, as contended by the plaintiff. In that case the court, after the death of the wife, denied a creditor's right to enforce a mortgage against the community to the prejudice of the husband's interest therein on a debt that had been contracted by the wife in her own name as a femme sole during the existence of the marriage in the husband's absence and without his knowledge. Consequently Articles 2265 and 2266 had no application. No judgment had been obtained in that case, as in the case at bar, affecting the immovable property."
Appellant argues to this court that the application of the rule of law in Humphreys v. Royal could lead to an unconstitutional deprivation of property rights as applied to a woman who has no means at hand to protect herself from fraudulent recitations by the husband as head and master of the community, and as such administrator of the property.
The plaintiff in this instance procured the divorce and had ample protection of her rights in the property had she complied with the Louisiana laws relating to registry. No discrimination because of sex can be shown under these circumstances.
For the foregoing reasons the judgment appealed from is affirmed at appellant's costs.
AYRES, J., dissents, with written reasons.
AYRES, Judge (dissenting):
I am not satisfied that the laws pertaining to registry (LSA-R.S. 9:2721, LSA-C.C. Arts. 2264 and 2266) have any application to the facts of the instant case.
The principle is well settled in the jurisprudence of this State that:

"The wife's half interest in the community property is not a mere expectancy during the marriage; it is not transmitted to her by or in consequence of a dissolution of the community. The title for half of the community property is vested in the wife the moment it is acquired by the community or by the spouses jointly, even though it be acquired in the name of only one of them. Rev.Civ.Code, art. *216 2420." Phillips v. Phillips, 160 La. 813, 107 So. 584, 588 (1926).
Nevertheless, the husband, during the marriage, as head and master of the community, has the authority to alienate the community property. Such authority, however, does not continue in him after a dissolution of the marriage which carries with it a dissolution of the community. Upon such dissolution, the former husband and wife become joint owners of the property. Thus, the subsequent mortgage and the sale predicated thereon constituted, as to the former wife's interest therein, the mortgage and sale of the property of another and, as such, were null and void.
The rule is tersely stated in LSA-C.C. Art. 2452: "The sale of a thing belonging to another person is null; ...."
Thus, it would appear that the only effect of the mortgage executed by the husband subsequent to the divorce, the foreclosure, the sale of the property, and the resales by the vendee was to enable the purchasers to acquire title to plaintiff's interest through prescription based on possession for the requisite period of time.
"Prescription is" defined as "a manner of acquiring the ownership of property, or discharging debts, by the effect of time, and under the conditions regulated by law.
"Each of these prescriptions has its special and particular definition."
LSA-C.C. Art. 3457.
The requisite period of possession of the property varies according to whether the purchaser is in bad or good faith and whether the property is immovable or movable. LSA-C.C. Art. 3472.
"He who acquires an immovable in good faith and by just title prescribes for it in ten years...."
LSA-C.C. Art. 3478.
To me, it is obvious the Legislature did not intend, by enacting the registry laws, to subordinate or nullify the codal provisions and the jurisprudence which have reference to the vesting of title in the wife in the community property at the instant of the property's acquisition. Other than by her voluntary act, it would appear that the divesting of her interest would be by adverse possession for such a period of time as prescription would accrue.
In Humphreys v. Royal, 215 La. 567, 41 So.2d 220, 223 (1949), Justice Hawthorne, in a dissenting opinion, made an observation which is also appropriate to the situation presented here:
"Upon the dissolution of the community either by death of the husband or by divorce, the wife has a vested interest in one-half of the community property, and the majority holding, by applying the law of registry, has the effect of permitting the husband in this case, by his false and untrue statements made in the deeds that he was a single man, to take away from the wife her vested interest in the property. Likewise, if the wife had died, leaving minor heirs born of the marriage, their interest, inherited from their mother, would also be divested.
* * * * * *
"In my opinion, the preservation of the community interest is paramount, and should prevail against the proposition of law dealing with the protection of third persons by registry, and, as stated in the James case, supra [Succession of James, 147 La. 944, 86 So. 403, 405 (1920)], it is the duty of a person who deals with a purchaser of immovable property to find out whether he or she was married or single at the date of such purchase."
The former wife's position should not be worse than that of any other third person whose property has been sold by another without authority. Such owner could rely upon his title until deprived of his ownership by prescription. The former wife should be accorded the same rightno less than that of any other third person.
*217 It appears appropriate to further note that our search has not disclosed nor have counsel cited any authority, legislative or otherwise, that requires the registration of evidence of a marriage or of its dissolution on the conveyance records. We know of no such requirement.
This court, in Wright v. DeFatta, 142 So.2d 489, 492 (La.App., 2d Cir., 1962), held that a zoning ordinance, though affecting immovable property, did not subject it to the statutory provisions respecting public registry as ordinarily required by LSA-R.S. 9:2721. Tacit approval of this holding was given by the Supreme Court by the granting of writs limited or restricted to other grounds. (244 La. 251, 152 So.2d 10 [1963].)
On a basis of the aforesaid reasons, I respectfully dissent from the majority opinion.