799 So.2d 831 (2001)
Mitchell KIRKPATRICK, et ux. Plaintiffs-Appellees,
v.
BANKAMERICA HOUSING SERVICES, A DIVISION OF BANK OF AMERICA, FSB and Greenpoint Credit, L.L.C., Defendants-Appellants.
No. 34,692-CA.
Court of Appeal of Louisiana, Second Circuit.
November 2, 2001.
*832 Richards Law Firm, by Karen T. Richards, Keith P. Richards, Baton Rouge, Counsel for Appellants.
Sharp, Henry, Cerniglia, Colvin & Weaver, by James H. Colvin, Homer, Counsel for Appellees.
Before NORRIS, BROWN, WILLIAMS, STEWART and GASKINS, JJ.
GASKINS, Judge.
The question presented in this case is whether a "release of lien" document issued by a creditor to the Department of Public Safety and Corrections (DPS), which states that the account covered by the lien was "paid in full," operates as a remission of the deficiency debt. The trial court found that it did and granted a declaratory judgment in favor of plaintiffs Mitchell and Julie Kirkpatrick, holding that the Kirkpatricks' debt to BankAmerica Housing Services, a division of Bank of America, FSB (BAHS), was paid in full. BAHS appeals. We reverse.

FACTS
On October 17, 1995, Mitchell Kirkpatrick and his wife Julie borrowed $58,672.00 from BAHS to purchase a mobile home. They financed this purchase through a 25 year mortgage, secured by the mobile home.
According to Mr. Kirkpatrick, the mobile home had numerous problems, and the manufacturer and seller were unable to repair the problems to the Kirkpatricks' satisfaction. In turn, the Kirkpatricks ceased making payments on the loan. Although not detailed in this record, apparently the Kirkpatricks later initiated a redhibition action against the manufacturer.
On May 6, 1997, Mr. Kirkpatrick executed a "Voluntary Surrender of Collateral, Waiver of Notice of Sale and Consent to Assumption" which provided, in part:

*833 I expressly waive and renounce any right to receive notice of sale with respect to any private or public sale of the collateral.
. . . .
I understand that I shall continue to be bound by the terms and conditions of my contract, including my liability to you for any deficiency remaining after disposition of the collateral.
. . . .
According to the Kirkpatricks' petition, BAHS repossessed their mobile home on May 22, 1997. On that same date, BAHS sent Mr. Kirkpatrick a letter which stated that, unless he paid the amount currently due, the mobile home would be sold at private sale "at anytime after 10 days."
After the surrender of the home, the Kirkpatricks made no further payments. On August 1, 1997, the mobile home was sold to a third party for $46,264.00, leaving a deficiency of $18,295.42.
On August 12, 1997, Nancy McSherry with BAHS executed a Bank of America form entitled "Release of Lien," which stated:
This is to certify that the account in the name of Mitchell Kirkpatrick covering a 1996 Redman Walden 80 × 28 Mobile Home Serial Number 12322019A/B is paid in full.
Ms. McSherry forwarded the release to the DPS. The Kirkpatricks first received a copy of this document almost two years later, on June 28, 1999, in discovery for their redhibition action against the manufacturer.
On March 17, 2000, the Kirkpatricks filed a petition for a declaratory judgment in the Second Judicial District Court urging that the "Release of Lien" was "an express acknowledgment by Defendant, BankAmerica, that Plaintiffs' account has been paid in full and that no further sum is owed by the Plaintiffs to Defendant in connection with the financing of said manufactured home." The Kirkpatricks further alleged that BankAmerica has no right to pursue them for the deficiency, and asked the court for a declaratory judgment holding the Release to be a valid remission of debt.
The matter came to trial on August 7, 2000. The court heard testimony from Mike Steele, remarketing manager for Greenpoint Credit, the company that services BAHS accounts. Mr. Steele said that Ms. McSherry, his former secretary, was unavailable because she died in June 2000. Mr. Steele testified that on August 29, 1997, he executed a charge-off form on the Kirkpatrick account in the amount of $18,295.42 and forwarded the document to the collection department in San Diego, California, for collection. In questioning at trial by counsel for BAHS, Mr. Steele explained why BAHS issued the Release on August 12, 1997:
The Release of Lien form is prepared for us, especially in the State of Louisiana being a title state and mobile homes are governed under the title laws in this state, that we have to send that release notifying the state that we're releasing our lien to get the title back, a clear title, to transfer to the new buyer of the home.
Mr. Steele also said that BankAmerica ordinarily executed an affidavit of peaceful possession along with the Release of Lien. Mr. Steele said that the affidavit, which further describes BAHS' right to proceed toward a deficiency judgment, was not in BAHS' file for the Kirkpatricks.
Mr. Kirkpatrick testified that he did not originally receive a copy of the Release from BankAmerica but, when he finally did receive it, he interpreted the document to mean that his debt to the bank was in fact paid in full. He also said that BAHS *834 collectors only contacted him once and that he informed the collector that the account was in litigation.
The parties also introduced the deposition of Cheryl Allen, the BAHS collections manager for deficiency collections services. Ms. Allen said that her office was the only office within BAHS that would have had the authority to settle a deficiency balance with a customer and that the Release document did not originate with her. Ms. Allen explained that her office had little success in initially attempting to contact the debtors and exhausted a number of collection information resources in an effort to collect the deficiency. She further explained that the parties were unable to reach a settlement agreement.
After hearing this evidence, the court concluded that BAHS' filing of the Release with the DPS triggered the application of the public records doctrine and that documents so filed are presumed to be true. The court also observed that BAHS obtained a benefit from the filing of this Release, namely, the receipt of merchantable title to the mobile home. The court stated that the parties are presumed to have knowledge of the contents of public records and that, based on this imputed knowledge, the debtors tacitly accepted the Release as a remission of debt. On August 9, 2000, the court signed a judgment declaring that the Kirkpatricks' debt to BAHS was paid in full. From that judgment, BAHS now appeals.

DISCUSSION
The collateral here in question is a mobile home, which is a movable, subject to the laws governing vehicle certificates and to the commercial laws regulating secured transactions.[1] The Office of Motor Vehicles in the DPS is required by law to keep titles of mobile homes subject to security devices for a period of 10 years or for the period stated for the termination of the security device. La. R.S. 9:3259.1(F).
The question presented is whether a release of lien issued by the creditor to the DPS waives the creditor's right to a deficiency judgment despite a voluntary surrender in which the creditor expressly reserved its rights to a deficiency judgment. Otherwise, the surrender and sale of the home appear to have been done in compliance with Chapter 9.
The seller of a movable subject to the certificate of title laws must provide the buyer with a certificate of title in accordance with La. R.S. 32:705. Any security interest in the home will be reflected upon the certificate of title. La. R.S. 32:706(E)(3).
La. R.S. 32:708 provides, in part:
B. (1) Upon the final discharge of any chattel mortgage or security interest, the owner or any lien holder may present the certificate of title with the fee prescribed by law, if not prepaid, to the commissioner and request that the commissioner note on the face of the certificate of title and his records a cancellation of notation of said lien so endorsed as satisfied by the holder thereof on the face of the certificate of title. The commissioner shall comply with such request, if the satisfaction appears genuine.
In neither the commercial laws nor in the certificate of title laws is there a provision that suggests that a release of lien issued to the DPS serves to extinguish a debtor's obligation to repay a borrowed *835 sum even though that release recites that the debtor's account is paid in full. The underlying obligation to repay a debt is independent of the secured party's security interest in collateral; the creditor's security interest is simply the most effective means of insuring the repayment of the obligation.
La. R.S. 10:9-504 provides, in relevant part:
(4) When collateral is disposed of by a secured party after default, the disposition transfers to a purchaser for value all of the debtor's rights therein, discharges the security interest under which it is made and any security interest or lien subordinate thereto. The purchaser takes free of all such rights and interests even though the secured party fails to comply with the requirements of this Part or of any judicial proceedings
(a) in the case of a public sale, if the purchaser has no knowledge of any defects in the sale and if he does not buy in collusion with the secured party, other bidders or the person conducting the sale; or
(b) in any other case, if the purchaser acts in good faith.
The Release works in conjunction with this statute to clear the title so that the home can be remarketed. The absence of an affidavit of peaceful possession from the plaintiffs' BAHS file is of little importance. That affidavit is required by La. R.S. 32:712 for involuntary transfers and is consistent with Louisiana's tradition of rejecting "self-help" in the repossession of collateral. The instant case deals with a voluntary transfer of consumer goods, see La. R.S. 10:9-505(3), along with an express reservation of deficiency rights, not a repossession.
In its reasons for judgment, the trial court relied in part on the public records doctrine. Without engaging in a lengthy discussion, we observe that, even if the doctrine could be applied to this transaction concerning movable property, it is an essentially negative doctrine:
Third persons are not allowed to rely on what is contained in the public records but can instead "rely ... on the absence from the public record of those interests that are required to be recorded." Redmann, The Louisiana Law of Recordation: Some Principles and Some Problems, 39 Tul.L.Rev. 491 (1965).
See also Camel v. Waller, 526 So.2d 1086 (La.1988). Further, the public records doctrine benefits third parties; the plaintiffs would not be third parties.
Finally, the Kirkpatricks argued and the trial court accepted that BAHS remitted the debt by its execution of this instrument. Remission of debt is described in La. C.C. arts. 1888-1892:
Art. 1888:
A remission of debt by an obligee extinguishes the obligation. That remission may be express or tacit.
Art. 1889:
An obligee's voluntary surrender to the obligor of the instrument evidencing the obligation gives rise to a presumption that the obligee intended to remit the debt.
Art. 1890:
A remission of debt is effective when the obligor receives the communication from the obligee. Acceptance of a remission is always presumed unless the obligor rejects the remission within a reasonable time.
Art. 1891:
Release of a real security given for performance of the obligation does not give rise to a presumption of remission of debt.

*836 Art. 1892:
. . . .
Remission of debt granted to the sureties does not release the principal obligor.
. . . .
The only presumption of intent to remit arises when the creditor surrenders the instrument evidencing the obligation. See La. C.C. art. 1889. The debtor bears the burden of proving that a remission occurred. Arledge v. Bell, 463 So.2d 856 (La.App. 2d Cir.1985).
First, we conclude that the Release did not amount to an express remission. The Release was communicated to the DPS, not to the Kirkpatricks; the debtors discovered the existence of this document only in their redhibition action against the manufacturer. BAHS did not return to the Kirkpatricks the contract obligating them to pay for the mobile home. The record reveals no communication whatever from BAHS to the Kirkpatricks that BAHS was relinquishing its right to a deficiency judgment. BAHS had statutory and contractual rights to seek a deficiency judgment. The fact that they did not make every effort to obtain a deficiency judgment or that they may have been waiting for the other litigation on this case to be resolved would not equate to a remission of the debt.
The more difficult question is whether the remission was a tacit remission. As this court noted in Arledge, supra, "All that is required under the remission articles is a determination that the creditor intended to remit his claim or that he has estopped himself to claim the contrary." Given the evidence at trial, including the efforts of BAHS to collect the deficiency after the issuance of the Release and the testimony that the Release was an ordinary practice consistent with the resale of collateral, the trial court erred in concluding that BAHS meant to forego its rights to pursue the Kirkpatricks for the deficiency. Furthermore, there is no evidence that BAHS knew or should have known that the Kirkpatricks would rely on the Release as evidence of remission nor is there evidence that the Kirkpatricks actually relied upon the Release to their detriment. The Kirkpatricks failed to prove that the Release amounted to a remission of the deficiency.

CONCLUSION
The facts establish that BAHS executed the Release in order to facilitate its resale of the collateral, not to forgive the Kirkpatricks' indebtedness. The trial court erred in concluding otherwise. The judgment of the trial court is hereby reversed. Costs of this proceeding are assessed to Mitchell and Julie Kirkpatrick.
REVERSED.
BROWN, J., dissents with written reasons.
BROWN, J., dissenting.
The question posed is not, as stated by the majority, whether the Release of Lien document operates as a remission of a deficiency. Rather, the question presented is whether the trial court was clearly wrong in finding that the totality of the evidence showed that the creditor intended to remit its claim to a deficiency.
The debtor bears the burden of proving that a remission occurred. Arledge v. Bell, 463 So.2d 856 (La.App. 2d Cir.1985). As this court noted in Arledge, supra at 858, all that is required under the remission articles is a determination that the creditor intended to remit his claim or that he has estopped himself to claim the contrary.
The issue of whether BAHS intended to remit the deficiency is a question of fact. *837 In Daye v. General Motors Corp., 97-1653 (La.09/09/98), 720 So.2d 654, 658-659, the supreme court said:
A trial court's findings of fact will not be disturbed unless the record establishes that a factual, reasonable basis does not exist and the finding is clearly wrong or manifestly erroneous. Where two reasonable views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Although deference should be accorded to the factfinder, the court of appeal and this court have a constitutional duty to review facts. Therefore, it is improper to assert that a trial court's factual determinations "cannot ever, or hardly ever, be upset."
The issue to be resolved by the reviewing court is not whether the trier of fact is right or wrong, but whether the factfinder's conclusion was a reasonable one. (Citations omitted).
The following support the trial court's conclusion:
1) The Kirkpatricks voluntarily surrendered the collateral in 1997; 2) BAHS never notified the Kirkpatricks of the actual sale of the collateral and the amount of any deficiency; 3) the Release of Lien filed by BAHS with the Department of Public Safety in 1997 stated that the debt was paid in full; 4) BAHS did not follow its standard procedure and file an affidavit with the Release of Lien describing its right to obtain a deficiency judgment; 5) the lack of any demand by BAHS upon the Kirkpatricks for payment; and, 6) the failure of BAHS to petition and obtain a deficiency judgment. I note that defendant simply answered the Kirkpatricks' petition. No reconventional demand seeking a deficiency judgment was filed.
Defendant strongly argues that it had no intent to remit the debt and sets out evidence that supports such a conclusion. As noted above, however, "the issue to be resolved by the reviewing court is not whether the trier of fact is right or wrong, but whether the factfinder's conclusion is reasonable." In this case, there is a reasonable basis for the trial court's conclusion.
NOTES
[1] There is no indication that the mobile home was expressly immobilized as allowed by La. R.S. 9:1149.4.