960 So.2d 1235 (2007)
The ESTATE OF Mary Jacqueline LEVITZ, Plaintiff-Appellant,
v.
Joe E. BROADWAY and Don R. Broadway, Defendants-Appellees.
No. 42,308-CA.
Court of Appeal of Louisiana, Second Circuit.
June 20, 2007.
*1236 Mulhearn and Smith by Leroy Smith, Jr., Tallulah, for Appellant.
Hamilton & Hamilton by Orlando N. Hamilton, Jr., Oak Grove, for Appellees.
Before STEWART, GASKINS and LOLLEY, JJ.
STEWART, J.
At issue in this appeal is whether the evidence supports the trial court's finding of a remission of a debt by the obligee, Mary Jacqueline Levitz, prior to her death. Having reviewed the record, we find no manifest error in the trial court's judgment, and affirm.

FACTS
Background
On April 17, 1995, Joe E. Broadway and Don R. Broadway executed a promissory note in favor of their sister, Mary Jacqueline Levitz ("Jackie"), for the amount of $70,000 payable in one-hundred twenty equal monthly installments of $849.80, inclusive of principal and interest. The first payment was due May 1, 1997, and the last was due on April 1, 2007. The note also provided for semi-annual payments of accrued interest during the first two years until the regular monthly payments were to begin. The Broadway brothers used the money to purchase land in Arkansas and to build a cabin. The note provided *1237 that title to the property would be transferred to Jackie in the event the loan was not paid. No payments have ever been made on the note.
On November 18, 1995, Jackie disappeared from her home in Vicksburg, Mississippi, under circumstances indicative of foul play. She was eventually pronounced dead, and her estate was opened in Florida with the note listed as one of the assets. An ancillary succession was opened in West Carroll Parish where the Levitz estate represented by Tiki Levon Shivers, the co-ancillary administrator of the estate and sister of Jackie, Joe, and Don, filed suit against Joe and Don to collect the amount due on the note or obtain title to the Arkansas property.
In answer, Joe and Don pled as an affirmative defense the remission of the note by their sister, Jackie. They filed a motion for summary judgment supported by ten affidavits, their own and those of various family members, stating that Jackie had orally expressed the intention to forgive the debt and not require payment by her brothers. Jackie indicated to them that the property would be for the whole family to enjoy.
The estate opposed the motion for summary judgment with affidavits from Tiki and Mitchell Broadway, another Broadway sibling. Tiki's affidavit referred to a conversation she had with Jackie shortly before her disappearance. She recalled Jackie saying that she told Joe and Don not to worry now about paying the loan so that they could use the money to improve the cabin. Mitchell's affidavit related a conversation he had with Jackie in March or early April of 1995, during which she asked him to become a partner in buying the Arkansas land. Not wanting to be involved in financial dealings with his brother Don, he declined. According to Mitchell's affidavit, Jackie told him that hunting leases were to be sold to generate income to repay the loan. In another conversation in October 1995, she again told Mitchell that he should have gotten in on the deal, because the hunting club fees would bring in a lot of money.
The trial court granted summary judgment in favor of the Broadway brothers after determining that the affidavits offered by both sides were not contradictory and did not create an issue of material fact for trial. The trial court's summary judgment was reversed in Estate of Levitz v. Broadway, 37,246 (La.App.2d Cir.5/14/03), 847 So.2d 170, and the matter was remanded for further proceedings.
Trial Proceedings and Testimony
Upon remand, a bench trial was held. The trial court heard testimony from Joe, Don, and Tiki, as well as from Geraldine "Gerri" Brown, another Broadway sibling. The parties stipulated that the wives of Joe and Don, if called to the stand, would testify in the same manner as their husbands. The estate introduced the deposition of Mitchell, and Joe and Don introduced the depositions of three elderly aunts.
Joe testified that he drew up the note for the loan and brought it to Jackie's bank for safekeeping. He claimed she did not want them to sign a note. Joe related a visit by his sisters Jackie and Geraldine to his house during which he mentioned selling hunting leases on the property. Jackie indicated that she did not want to go forward with that plan. Instead, she told him that she was proud of what he and Don were doing with the property and that she had decided to forgive the debt.
Don testified that he signed the note presented to him by Joe and later learned from Joe that Jackie had forgiven the debt. When he and other family members were invited out to dinner in Vicksburg by Jackie, he took the opportunity to thank her for forgiving the debt. He testified *1238 that she told him they did not owe a penny.
Gerri recalled visiting family in Oak Grove with Jackie. She testified that while visiting Joe, he discussed selling the hunting leases to get money to repay Jackie. Jackie told him not to sell leases on the property and explained that she was forgiving the debt and that they did not have to worry about paying the money back. She told Joe to use the money to make the property a place the whole family could enjoy. Gerri then recalled visiting their three elderly aunts who had gotten together to see Jackie. During their conversation, Jackie told the aunts that she had forgiven the note. Gerri also testified that she was present at the family dinner gathering at Jackie's house in Vicksburg and overheard Jackie tell her brothers that they would not have to repay the money, that she wanted them to improve the property, and that she was looking forward to going there. Gerri stated that Jackie wanted the family to be able to enjoy the property.
Joe and Don introduced the depositions of their three elderly aunts that were taken for trial purposes. Effie Broadway Parker, Minnie Merle Thompson, and Tura Jean Broadway Lee Thompson all testified about the conversation during Jackie's and Gerri's visit with them. They all testified that Jackie said she was not making her brothers pay back the money she had loaned them. They recalled that Jackie wanted the family to be able to visit and enjoy the property as a place where they could all be together.
Tiki testified that she spoke to Jackie the night before she disappeared. During their conversation, Jackie mentioned the work being done on the Arkansas cabin by her brothers and how proud she was of them. Tiki recalled Jackie saying that she told her brothers to use the money to fix up the cabin and that they would worry about paying on the note later. Although Joe and Don had asked her to try to recall the conversation in Vicksburg during which Jackie forgave the loan, Tiki testified that she did not recall that conversation.
The estate introduced the trial deposition of Mitchell. He testified that Jackie had contacted him in the spring of 1995, about being a partner in a hunting camp venture in Arkansas. Because he did not want to have financial dealings with Don, he turned her down and warned her that Don would not pay her back. Jackie told him that she was neither naive nor stupid and that she would either be paid or would take the property. Mitchell did not recall whether this conversation occurred before or after she had loaned the money to Joe and Don. He recalled speaking with her again in October 1995, and mentioning to her that he did not believe Don would repay the money. The record does not establish whether this last conversation occurred before or after those other conversations during which Jackie allegedly forgave the debt.
Trial Court Judgment
The trial court ruled in favor of the Broadway brothers, Joe and Don, finding a remission of the debt by Jackie. The trial court referred to the numerous witnesses, including disinterested ones, who testified that she forgave the debt. In contrast, the trial court found that Tiki's testimony was not supported by other evidence, particularly as Mitchell could not recall whether his conversation with Jackie in early March or April of 1995, occurred before or after she had loaned Joe and Don the money. Judgment was rendered dismissing the action of the Levitz estate on the note. This appeal followed.

DISCUSSION
On appeal, the Levitz estate argues that the defendants have not asserted a *1239 defense of remission under La. C.C. Art. 1988. Instead, the estate claims that Joe and Don are asserting discharge of a promissory note by renunciation as governed by La. R.S. 10:3-604 and that they have not met the requirements of this article. We find no merit in this argument. The defendants specifically pled remission in their answer and asserted it as an affirmative defense against the estate's claims. Therefore, this matter is governed by La. C.C. art.1988 and related provisions.
As provided in La. C.C. art.1988, the obligee's express or tacit remission of a debt extinguishes the obligation. There is a presumption of remission when the obligor voluntarily surrenders to the obligee the instrument evidencing the obligation. La. C.C. art. 1889; Kirkpatrick v. Bank-America Housing Services, a Div. of Bank of America, FSB, 34,692 (La.App.2d Cir.11/2/01), 799 So.2d 831. Because the note was not surrendered, remission is not presumed in this matter. However, La. C.C. art. 1890 states that remission is effective when the obligor receives the communication from the obligee; acceptance is presumed unless the obligor rejects the remission within a reasonable time.
The burden of proving remission is on the party claiming the benefit. Arledge v. Bell, 463 So.2d 856, 858 (La.App. 2d Cir.1985), and cases cited therein. No particular form is required, and remission may occur by either oral or written declaration. Id. The remission articles require only a determination "that the creditor intended to remit his claim or that he has estopped himself to claim the contrary." Id. See also Kirkpatrick, supra.
In this matter, the defendants had the burden of proving remission. They sought to satisfy this burden by testimony that their sister Jackie orally forgave or remitted the debt before she disappeared and was declared dead. The estate asserts that parol evidence cannot be offered against the interest of the deceased. This is incorrect. Our law clearly provides that statements against the deceased's interest may be admitted into evidence as an exception to the hearsay rule. Kirkpatrick, supra; Arledge, supra. While the declarations against the interest of the deceased are admissible and of some probative value, they are the weakest kind of testimony and must be carefully scrutinized and weighed as such statements may be easily fabricated. Arledge, supra. Therefore, the statements against the interests of the deceased pertaining to her alleged remission of the debt owed to her by Joe and Don were admissible.
The trial court's finding that Jackie remitted the debt is a factual finding subject to the manifest error standard of review. As an appellate court, we may reverse the trial court's findings of fact only upon determining that no reasonable factual basis supports the finding and that the record establishes that the finding is clearly wrong. Stobart v. State, through DOTD, 617 So.2d 880 (La.1993); Mart v. Hill, 505 So.2d 1120 (La.1987). The issue to be determined is not whether the trial court was right or wrong, but whether its finding was a reasonable one. Stobart, supra. Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Canter v. Koehring Co., 283 So.2d 716 (La.1973).
Having reviewed the record in its entirety, we cannot say that the trial court's factual determination that Jackie remitted the debt was either manifestly erroneous or clearly wrong. The defendants presented their own testimony and that of several relatives all of whom testified that Jackie said she was forgiving the debt and that she wanted Joe and Don to improve the Arkansas property for the family's use and *1240 enjoyment. The testimony related three occasions on which Jackie orally expressed this desire to Joe and Don personally and to other family members. While the testimony of Joe and Don may be considered self-serving, their testimony was corroborated and supported by Gerri and the trial depositions of their aunts, and none of these witnesses were shown to be biased or lacking in credibility. We find this testimony establishes an oral remission of the debt by Jackie in her conversations with Joe at his house, with the aunts and Gerri in Oak Grove, and with Don at her home in Vicksburg.
On the other side, Tiki's testimony about her conversation with Jackie the night before she disappeared related that Jackie told her brothers not to worry about paying back the money while they worked on the cabin and that they would worry about repayment later. Upon consideration of the testimony indicating that Jackie had already remitted the debt, the trial court could have disbelieved Tiki's account of the conversation or concluded that she misunderstood what her sister said. Tiki did mention that Jackie was upset when they last spoke. Also, the trial court could have reasonably discounted Mitchell's testimony, because it was not established whether his last conversation with Jackie occurred before or after she told Joe, Don, and other family members that she was forgiving the debt.
We are also persuaded by the apparent lack of acrimony between the parties in this proceeding. Neither side has accused the other of lying or putting words in the mouth of the deceased. Rather, witnesses for each side presented his or her own accounts of what they heard Jackie say regarding the loan and her intentions toward it. Based on the evidence presented, the trial court made a reasonable finding of fact that cannot be reversed on appeal.

CONCLUSION
For the reasons stated, we affirm the trial court's judgment and assess costs of appeal to the appellant.
AFFIRMED.